Sichenzia Ross Ference Kesner LLP
Michael H. Ference (MF-7600)
Jeffrey R. Burke (JB-5265)
Scott H. Kaliko (SK-1163)
Robert B. Volynsky (RV-7076)
61 Broadway, 32nd Floor
New York, New York 10006
Telephone: (212) 930-9700
Facsimile: (212) 930-9725
Email: mference@srfkllp.com
Email: jburke@srfkllp.com
Email: skaliko@srfkllp.com
Email: rvolynsky@srfkllp.com

*Attorneys for Plaintiffs/Counterclaim Defendants
John McAfee and MGT Capital Investments, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN MCAFEE and MGT CAPITAL INVESTMENTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> INTEL CORPORATION, <br><br> Counterclaim Plaintiff/Defendant. <br><br> v. <br><br> JOHN MCAFEE and MGT CAPITAL INVESTMENTS, INC., <br><br> Counterclaim Defendants. | Civil Action No.: 1:16-cv-06934-JPO <br><br> ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................................................... ii-iii

**PRELIMINARY STATEMENT** ................................................................................................ 1-2

**BACKGROUND** ....................................................................................................................... 2-6

**ARGUMENT** ............................................................................................................................ 7-14

I.  Plaintiffs Are Likely to Succeed on the Merits
    of Their Declaratory Judgement Claims ................................................................... 7-10

II. Plaintiffs Are In Danger of Irreparable Harm ......................................................... 10-12

III. In Balancing The Equities, The Status Quo Should Be Maintained ....................... 12-13

IV. The Public Interest Would Not Be Disserved By A Preliminary Injunction .......... 13-14

**CONCLUSION** ............................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Diversified Mortg. Inv'rs v. U.S. Life Title Ins. Co.,*
   544 F.2d 571 (2d. Cir. 1976) .................................................................................................12

*Flood v. Kuhn,*
   309 F. Supp. 793 (S.D.N.Y. 1970) ........................................................................................12

*Guth Chocolate Co. v. Guth,*
   215 F. 750 (D. Md. 1914) .......................................................................................................8

*JA Apparel Corp. v. Abboud,*
   568 F.3d 390 (2d. Cir. 2009) ............................................................................................. 8-9

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
   596 F.2d 70 (2d Cir. 1979) ...................................................................................................10

*Jayaraj v. Scappini,*
   66 F.3d 36 (2d Cir. 1995) .....................................................................................................10

*Johanna Farms, Inc., v. Citrus Bowl, Inc.,*
   468 F. Supp. 866 (E.D.N.Y. 1978) ........................................................................................13

*Mackenzie-Childs, Ltd. v. Mackenzie-Childs.,*
   No. 06-CV-6107T, 2008 U.S. Dist. LEXIS 1717 (W.D.N.Y, Jan. 9, 2008) ......................13

*Matter of Freit & Dexler, Inc.,*
   42 B.R. 355 (S.D.N.Y. 1984) ................................................................................................13

*Madrigal Audio Labs v. Cello, Ltd.,*
   799 F.2d 814 (2d Cir. 1986) .............................................................................................. 7-9

*N.Y. Progress & Prot. PAC v. Walsh.,*
   733 F.3d 483 (2d Cir. 2013)....................................................................................................7

*Power Test Petroleum Distribs., Inc., v. Calcu Gas, Inc.,*
   754 F.2d 91 (2d Cir. 1985).....................................................................................................10

*Reuters, Ltd. v. United Press Int'l, Inc.,*
   903 F.2d 904 (2d Cir. 1990) .................................................................................................10

*Sea Carriers Corp., v. Empire Programs, Inc.,*
   2006 U.S. Dist. LEXIS 8384 (S.D.N.Y. Nov. 20, 2006 ......................................................10

*Time Warner Cable v. Bloomberg L.P.*,
    118 F.3d 917 (2d Cir. 1997). ................................................................................... 13

*Tom Doherty Assocs. v. Saban Entm't, Inc.*,
    60 F.3d 27 (2d Cir. 1995) ...................................................................................... 12

*TravisMathew, LLC v. Leisure Soc'y Unlimited, LLC*,
    2012 U.S. Dist. LEXIS 192975 (C.D. Cal. Nov. 2015)............................................7-9

*Tex. Instruments Inc. v. Tessera. Inc.*,
    231 F.3d 1325 (Fed. Cir. 2000) .............................................................................. 7

*United States Polo Ass'n v. PRL USA Holdings, Inc.*,
    800 F. Supp.2d 515 (S.D.N.Y. 2011) ................................................................... 10

*Wales Indus. v. Hasbro Bradley, Inc.*,
    612 F. Supp. 510 (S.D.N.Y. 1985) ....................................................................... 12

*Winter v. Natural Res. Def. Council*,
    55 U.S. 7 (2008).................................................................................................... 7

*Ying Fung Moy v. Hohi Umeki*,
    10 A.D.3d 604, 781 N.Y.S.2d 684 (2nd Dept. 2004) .......................................... 13

**Statutes**

15 U.S.C. § 1115.................................................................................................. 5-6

15 U.S.C. § 1225.................................................................................................... 5

28 U.S.C. § 1331.................................................................................................... 5

28 U.S.C. § 1338.................................................................................................... 5

28 U.S.C. § 2201.................................................................................................... 5

28 U.S.C. §§ 2202.................................................................................................. 5

Fed. R. Civ. P. 65.................................................................................................... 1

Plaintiffs/Counterclaim Defendants, John McAfee ("McAfee") and MGT Capital Investments, Inc. ("MGT") (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of their motion pursuant to Rule 65(a) of the Federal Rules of Civil Procedure for a preliminary injunction (i) enjoining Defendant Intel Corporation ("Defendant" or "Intel") from selling, trading, assigning, leasing or otherwise transferring any alleged rights, in whole or in part, relating to any marks, names, trade names, or entities containing the word "McAfee" until the resolution of the underlying action, and (ii) granting such further relief in Plaintiffs' favor as may be deemed just, equitable, and proper.

## PRELIMINARY STATEMENT

Plaintiffs brought the underlying action for a judgment declaring that their use of or reference to the personal name of John McAfee and/or McAfee in their business, and specifically in the context of renaming MGT Capital Investments, Inc., of which McAfee is the Executive Chairman and Chief Executive Officer, to "John McAfee Global Technologies, Inc.," does not infringe upon Intel's trademark rights or breach any agreement between the parties. A true and correct copy of the Complaint is annexed hereto as **Exhibit 1**. Intel has submitted an Amended Answer and Counterclaims alleging Lanham Act and federal/state trademark violations and common law unfair competition relating to the same factual circumstances, which Plaintiffs have denied. True and correct copies of the Answer and Counterclaims and Reply to Counterclaims are annexed hereto as **Exhibits 2 and 3** respectively. Subsequent to the filing of this action, Intel announced its intention to sell a majority stake in its computer-security unit to private-equity firm, TPG Capital. It is unknown following the sale what bundle of rights TPG Capital has requested or what it might decide to do with the bundle of rights at issue between the parties in this matter.

1

A preliminary injunction to preserve the status quo as to who owns and who does not own any of the trademarks and rights at issue is necessary here, as any sales of the rights in controversy and any subsequent dissipation of said rights would render a judgment ineffectual and fail to settle the matter between the parties. Once the underlying matter is decided by the Court, then whatever rights remain to each of the parties may be freely sold or assigned without the pressing issue of the parties respective rights and ownership. As set forth herein, all of the prerequisites for injunctive relief are satisfied in this case.

Accordingly, Plaintiffs respectfully request that this Court issue a preliminary injunction (i) barring Intel from selling, trading, assigning, leasing or otherwise transferring any alleged rights, in whole or in part, relating to any marks, names, trade names, or entities containing the word "McAfee" until the resolution of the underlying action, and (ii) granting such further relief in Plaintiffs' favor as may be deemed just, equitable, and proper.

## BACKGROUND

On or about September 30, 1991, McAfee, who at the time was an individual doing business as McAfee Associates, entered into an Asset Acquisition Agreement (the "Agreement" or "Asset Purchase Agreement") with McAfee Associates, L.P. (the "LP") to transfer certain assets in exchange for stock in the LP and a promissory note. A copy of the Agreement is annexed hereto as **Exhibit 4**.

The Agreement sets forth, in pertinent part, that "upon the terms and subject to the conditions set forth in this Agreement, [McAfee] shall sell, convey, assign and transfer to [the LP] and [the LP] shall acquire all of [McAfee's] right, title and interest in and to the Assets." The Agreement defines the "Assets" as "the Contributed Assets and the Purchased Assets." The Agreement defined the Contributed Assets as "the Contracts, Property and Equipment,

Proprietary Rights, Receivables and all other assets of [McAfee] other than cash, cash equivalents, and the Purchased Assets" and the Purchased Assets as "[McAfee's] rights and title to the trademarks, tradenames, and associated goodwill used or useful in the conduct of [McAfee's] Business." (hereinafter collectively, the "Agreement Assets").

Critically, at the time of the Agreement, McAfee had not filed for or registered the trademark to "John McAfee," "McAfee," or any other iteration of his name.[1] Further, at no point in the Agreement did McAfee assign the rights to his personal name ("John McAfee's Personal Name"), via assignment of trademark or otherwise, or agree to restrict his right to do business using his own name. Additionally, the Agreement did not contain any non-compete provisions of any kind.

McAfee resigned from the LP in 1994 and subsequently sold his remaining stake in the LP in 1997. Since that time, McAfee has been a presence on the global stage in the computer world and beyond. McAfee has founded many computer-based business ventures,

---

[1] A review of the USPTO trademark database reveals eight (8) marks involving the word "McAfee" in conjunction with computers, though none refer to John McAfee, which upon information and belief were filed by the Defendant, and each of the filing dates are subsequent to the Agreement as follows:
    (a)    "MCAFEE," Registration No. 1818780, filing date December 21, 1992;
    (b)    "MCAFEE SECURITY," Registration No. 2885736, filing date February, 24, 2003;
    (c)    A stylized "M" on a shield followed by "McAfee," Registration No. 3960405, filing date October 7, 2009;
    (d)    A stylized "M" on a shield, Registration No. 3960406, filing date October 7, 2009;
    (e)    "MCAFEE PROVEN SECURITY," Registration No. 3232954, filing date April 20, 2006;
    (f)    "MCAFEE SECURE," Registration No. 4040679, filing date September 1, 2010;
    (g)    A stylized "M" on a shield followed by "MCAFEE SECURE," Registration No. 4040682, filing date September 1, 2010; and
    (h)    "MCAFEE LIVESAFE," Serial No. 85953784, filing date May 16, 2015. (the marks above, if found to be valid and existing and owned by the Defendant, plus any other valid and existing marks owned by the Defendant, are collectively referred to as "Defendant's Marks.")
    A review of "dead" – cancelled or abandoned – marks reveal that the LP (or one of its iterations) filed for marks, all subsequent to the execution of the Agreement, including: "MCAFEE ASSOCIATES," Registration No. 1803121, filing date August 10, 1992, cancelled on December 23, 2000. None of the dead marks were filed prior to the execution of the Agreement. The only mark, alive or dead, pertaining to the d/b/a "McAfee Associates" referred to in the Agreement was "MCAFEE ASSOCIATES," which was cancelled in 2000.
    Neither Defendant, nor its predecessors, ever consulted, requested or otherwise obtained the permission of McAfee to use his last name as part of Defendant's Marks.

3

including *inter alia*, Tribal Voice, which developed one of the first instant messaging programs, Future Tense Central, producer of a secure computer network device called the D-Central, and Cognizant a/k/a DCentral 1, an application for smartphones, which displays information about the permissions of other installed applications. McAfee also invested in and joined the board of directors of Zone Labs, makers of firewall software.

In or about May 2016, MGT announced that McAfee would be joining the company as Executive Chairman and Chief Executive Officer, and would be teaming up with other giants of the technology field, such as Nolan Bushnell, the founder of Atari and multiple other technology based companies, with the goal of acquiring a diverse portfolio of cyber security technologies. With cyber security industry pioneer McAfee at its helm, MGT Capital is positioned to address various cyber threats through advanced protection technologies for mobile and personal tech devices, including tablets and smart phones.

McAfee is now poised to focus his full attention to running his own company with his own name, in the arenas of cyber security and protection. In connection therewith, MGT asserted its intent to change its corporate name to "John McAfee Global Technologies, Inc." upon closing of the D-Vasive transaction.

On or about June 3, 2016, MGT received a letter from the Managing Counsel of Intel (the "Demand Letter"). A true and correct copy of the Demand Letter is annexed hereto as **Exhibit 5**. The Demand Letter, *inter alia*, wrongfully asserted that "McAfee sold the MCAFEE trademark to McAfee Associates, LP (a predecessor company)… [and] forfeited any right to use the McAfee name in connection with security solutions and services" and threatened that the use of the name "John McAfee Global Technologies, Inc." would result in Intel, as the owner of the LP, "tak[ing] all necessary legal action to protect its trademark rights." Intel did not set forth any

provisions in the Agreement to support its claims. Intel also indicated that McAfee's use of his own name for a company of which he is the Executive Chairman and CEO would "suggest some affiliation or relationship" with Intel or the Defendant's Marks, "likely to confuse consumers as to the source of… products," and that any use of McAfee's own name would constitute infringement and dilution of [the Defendant's Marks] as well as unfair competition". The Demand Letter further insisted that MGT provide "written confirmation by June 17, 2016 that [MGT] will not change [its] company's name to one that includes [the Defendant's Marks] or otherwise use the MCAFEE name as a trademark. You are now on notice of Intel's objections."

Defendant's assertion of its alleged rights against Plaintiffs, its written formal Demand Letter with its threat of legal action exposes Plaintiffs to potential liability for, *inter alia*, trademark infringement, trademark dilution, unfair competition and breach of contract, which has created an actual, substantial justiciable controversy between Plaintiffs and Defendant within the meaning of 28 U.S.C. §§ 1331, 1338, 2201 and 2202, concerning Defendant's purported rights to the Defendant's Marks and in McAfee's name.

Accordingly, on September 2, 2016, Plaintiffs filed an action seeking, *inter alia*, a declaratory judgment that (a) Plaintiffs' use of the company name "John McAfee Global Technologies, Inc." does not: (1) infringe Defendant's registered or unregistered Trademarks; (2) violate any provision of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) violate any provision of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (4) violate any other federal or state law; and/or (5) violate any common law; (b) Plaintiffs' use of or reference to McAfee's name in connection with the company name "John McAfee Global Technologies, Inc." is fair use and protected under Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b); (c) Plaintiffs' use of or reference to McAfee's name in connection with the company name "John McAfee

Global Technologies, Inc." is non-infringing and protected under Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b); (d) Plaintiffs' use of or reference to McAfee's name in connection with the company name "John McAfee Global Technologies, Inc." is not a breach of the Agreement; and (e) issuing an order directing the Commissioner of the U.S. Patent and Trademark Office to cancel the federal registrations of the Defendant's Marks and to deny any pending application of Defendant's Marks, based on non-use in commerce.

Intel has submitted an Amended Answer and Counterclaims alleging Lanham Act and federal/state trademark violations and common law unfair competition relating to the same factual circumstances, which Plaintiffs have denied.

Notwithstanding, on or about September 7, 2016, Intel and private-equity firm, TPG Capital announced "a definitive agreement under which the two parties will establish a newly formed, jointly-owned, independent cybersecurity company. The new company will be called McAfee following transaction close. TPG will own 51 percent of McAfee and Intel will own 49 percent in a transaction valuing the business at approximately $4.2 billion. TPG is making a $1.1 billion equity investment to help drive growth and enhance focus as a standalone business." (the "Transaction"). A copy of the "News Release" from Intel regarding the proposed transaction, available at https://newsroom.intel.com/news-releases/intel-security-tpg-partnership-mcafee/, is annexed hereto as **Exhibit 6**.

While it is clearly and critically involves the rights at bar between the parties, and should the sale go forward, any judgment awarded to Plaintiffs will be ineffectual. Therefore, pending the resolution of the underlying case, the rights and relationship between the parties should be preserved.

6

## ARGUMENT

### INTEL SHOULD BE PRELIMINARILY ENJOINED FROM TRANSFERING ANY ALLEGED RIGHTS TO ANY NAME OR MARK RELATING TO McAFEE

To be entitled to an injunction, a movant must establish (1) a likelihood of success on the merits of the case; (2) that it will suffer irreparable harm in the absence of injunctive relief; (3) that considering the balance of the hardships between plaintiff and defendant, a remedy at equity is warranted; and (4) that the public interest would not be disserved by a preliminary injunction. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1328 (Fed. Cir. 2000); *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013).

As set forth more fully below, Plaintiffs have satisfied all of the requirements for issuance of a preliminary injunction against Intel in order to maintain the status quo relating to any purported ownership of any name or mark referencing "McAfee" for the pendency of this action.

### I. Plaintiffs Are Likely to Succeed on the Merits of Their Declaratory Judgment Claims as John McAfee did not sell his name

Plaintiffs, in their action for a declaration that John McAfee can use his own name in his business, are likely to prevail on the merits and against Intel's various meritless trademark claims. McAfee's use of his own name in business is a lawful use.

As set forth more fully below, the Asset Purchase Agreement demonstrates no intention, let alone a clear unequivocal one, on behalf of John McAfee to convey an exclusive right to the use of his name. *TravisMathew, LLC v. Leisure Soc'y Unlimited, LLC*, 2012 U.S. Dist. LEXIS 192975 (C.D. Cal. Nov. 20, 2012) *citing Madrigal Audio Labs. V. Cello, Ltd.*, 799 F. 2d 814, 821-23 ("[T]hough an individual may sell the right to use his personal name, a court will not bar

7

him from using that name unless his intention to convey an exclusive right to the use of his own name is clearly shown."). While the courts recognize that names have value, and do not bar the right of an individual to sell his or hers, such a sale must be unequivocal. *See id.*

Notably, Intel does not, because it cannot, demonstrate this exclusive transfer of John McAfee's personal name. The Asset Purchase Agreement conspicuously omits specific reference to, *inter alia*, the transfer of unregistered trademarks, a non-compete clause, or any material reference thereof to the continued use of John McAfee's personal name. Lacking this fundamental element, Intel has no rights to restrict John McAfee from using his name in his business and chosen field.

In any event, at the time of the transfer McAfee did not own any trademarks concerning the use of John McAfee's personal name. Assuming *arguendo* McAfee did have common law trademarks that were transferred to the LP, there is no provision in the Agreement explicitly denoting McAfee's intention to convey such an onerous restriction on the use of his personal name. Specifically, the contract does not contain any explicit or implicit reference to McAfee's personal name. *Madrigal,* 799 F.2d at 822-823 citing *Guth Chocolate Co. v. Guth*, 215 F. 750, 767 (D. Md. 1914) ("[A] court will not bar him from using that name unless his 'intention to convey an exclusive right to the use of [his] own name' is 'clearly shown.'"). Absent unequivocal and indisputable terms demonstrating an adequate bargained for exchange regarding such a restrictive use, Second Circuit and Ninth Circuit courts are hesitant to restrict a person's use of their name in commerce after consummation of a transaction concerning same. *See e.g. TravisMathew, LLC,* 2012 U.S. Dist LEXIS 192975 at *13 *citing JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009); *see also Madrigal Audio Labs.*, 799 F.2d at 822 (2d Cir. 1986) ("[Al]though an individual may sell the right use his personal name, a court will not bar him

8

from using that name unless his intention to convey an exclusive right to the use of [his] own name is clearly shown.")

For instance, in *JA Apparel*, the Second Circuit considered whether an individual unambiguously sold his name as part of an asset purchase agreement. The agreement in *JA Apparel* provided that the individual and his business partner transferred to his former company all of his right, title, and interest to the "names, trademarks, trade names, service marks, logos, insignias . . . and all trademark registrations and applications therefor, and the goodwill related thereto." *JA Apparel*, 568 F.3d at 397. The Court held that that the contract language did not unambiguously provide that the individual agreed to sell the rights to use the individual's name for all commercial purposes. *See id.* at 396-399.

Similarly, a recent Ninth Circuit decision, relying on the analysis setforth in *JA Apparel*, held that an agreement, governed by California law, restricting the use of any "*trademark, trade name, service mark*" did not prohibit plaintiff from using his personal name in "all commercial contexts, such as in connection with a competing product or line of products." *TravisMatthew, LLC*, 2012 U.S. Dist. LEXIS 192975, at *12 (emphasis in original).

The boilerplate provisions set forth in §§ 1.8 and 1.9 of the Agreement unambiguously demonstrates that McAfee Associates transferred its rights to, *inter alia*, its "trademarks, tradenames and associated goodwill used or useful in the conduct of Seller's Business." *See Exh.* 4. Notably, there is no provision concerning the bargained for sale of John McAfee's *personal* name to the LP, either as a trademark, trade name, or an intention to otherwise convey the exclusive use of his name. *See Madrigal Audio Labs.*, 799 F.2d at 882. Consequently, there was no consideration for the use of John McAfee's personal name.

9

As there is no evidence that Intel has any right to restrict John McAfee's use of his own name in his business, specifically "John McAfee Global Technologies, Inc.," via the Agreement or otherwise, it is likely that Plaintiffs will succeed on the merits of their underlying claims and defenses. Moreover, as further stated below, the balance of equities weighs markedly in favor of Plaintiffs.

## II. Plaintiffs Are In Danger of Irreparable Harm

Irreparable harm is an "injury for which a monetary award cannot be adequate compensation." *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (*citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). "Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered. Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." *Reuters, Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (internal citations and quotations omitted).

Notwithstanding, the Second Circuit is clear that "[i]rreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark…because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540-41 (S.D.N.Y. 2011); *see also Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F. 2d 91, 95 (2d Cir. 1985). Additionally, "intent to frustrate any judgment on the merits" qualifies as a showing of irreparable harm. *Sea Carriers Corp. v. Empire Programs, Inc.*, 2006 U.S. Dist. LEXIS 83843, at *13 (S.D.N.Y. Nov. 20, 2006) (citations omitted). Intel's

10

announcement of its intention to convey the bundle of rights at issue to a third party, which came about *after* the commencement of the action, at minimum, requires the issuance of a preliminary injunction. *See* Exhibit 6.

By allowing Intel to proceed with this transaction without judicial resolution of the critical issues surrounding the use of John McAfee's personal name, the litigious issues and costs associated with the underlying claim will be compounded, multiplied, and run counter to the purpose of declaratory judgments to foster judicial economy.

At the time of the filing of the underlying claim and at present, Intel is the owner of, *inter alia*, the "Agreement Assets" enumerated in the Agreement. *See Exh.* 4. Notably, the underlying dispute is wholly reliant on whether or not the use of John McAfee's name was or was not a "Contributed Asset" and/or "Purchased Asset," as defined in the Agreement. The Demand Letter, which triggered the underlying action seeking a declaratory judgment, clearly posits Intel's belief that it owns John McAfee's name and consequently the right to sell John McAfee's name—a transaction which Intel immediately commenced *after* the underlying action was filed.

If Intel is not enjoined from effectuating the transaction and the rights to John McAfee's name are transferred to TPG, Plaintiff will be forced to expend substantial resources litigating against, *inter alia*, TPG and any other entities that TPG may license the name to.

The Complaint, Amended Answer and Counterclaims, Demand Letter, and Transaction, jointly and individually, demonstrate each parties' affirmative position regarding ownership of the core issue. Notwithstanding, and without engaging in meaningful discovery, Plaintiffs would be irreparably harmed by the sale of Intel's purported assets because a high likelihood exists that

Intel intends to sell the rights to use John's McAfee's name. This egregious defiance of the judicial process can neither be quantified nor redressed through monetary damages.

At issue here is the irreparable harm that will be caused to John McAfee's name the potential goodwill related thereto. *See Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir. 1995) (court affirmed the grant of a preliminary injunction and held that the loss of a prospective business opportunity constituted irreparable harm when the loss of goodwill related to the successful Power Rangers franchise was both imminent and non-quantifiable). If a preliminary injunction is not granted pending resolution of Plaintiffs' claim, McAfee's reputation may be further adversely affected by a third-party's improper and unpermitted use. *Wales Indus. V. Hasbro Bradley, Inc.*, 612 F. Supp. 510, 521-22 (S.D.N.Y. 1985).

For the aforementioned reasons Plaintiffs have sufficiently demonstrated irreparable harm to their business acumen by the consummation of the impermissible transaction for which monetary damages are unavailing. Accordingly, the Court should grant Plaintiffs' request for a preliminary injunction.

### III. In Balancing The Equities, The Status Quo Should Be Maintained

"The purpose of a preliminary injunction is to maintain the status quo pending a final determination on the merits." *Diversified Mortg. Inv'rs v. U. S. Life Title Ins. Co.*, 544 F.2d 571, 576 (2d Cir. 1976). "The status quo has been frequently defined as the last uncontested status which preceded the pending controversy. A preliminary injunction should serve to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began." *Flood v. Kuhn*, 309 F. Supp. 793, 798 (S.D.N.Y. 1970).

"[A] preliminary injunction may be granted where the defendant threatens or is about to do an act in violation of plaintiff's rights with regard to the subject of the action that may render

12

the judgment ineffectual." *In re Feit & Drexler, Inc.*, 42 B.R. 355, 357 (S.D.N.Y. 1984); *see also Ying Fung Moy v. Hohi Umeki*, 10 A.D.3d 604, 604, 781 N.Y.S.2d 684, 686 (2nd Dept. 2004) ("The purpose of a preliminary injunction is to maintain the status quo and prevent the dissipation of property that could render a judgment ineffectual.")

As set forth more fully in the preceding section, a preliminary injunction assuring that Intel does not divest itself of any alleged rights will preserve the status quo and allow full adjudication of the rights in dispute. If the status quo is not maintained until the full adjudication of the underlying matter, and the rights to use John McAfee's personal name are improperly transferred, the parties may subject to a litany of litigation and expending valuable resources. Consequently, the equities balance in the Plaintiffs' favor to maintain the status quo for the pendency of this action.

### IV.    The Public Interest Would Not Be Disserved By A Preliminary Injunction

Whenever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief. *Time Warner Cable v. Bloomberg L.P.*, 118 F.3d 917, 929 (2d Cir. 1997). "In a trademark case, an additional factor to be considered in conjunction with a request for a preliminary injunction is the public interest in the mark." *Johanna Farms, Inc. v. Citrus Bowl, Inc.*, 468 F. Supp. 866, 874 (E.D.N.Y. 1978).

It is in the public's best interest, as consumers and investors, to have clarity regarding the underlying rights at issue. A preliminary injunction preserving all of the alleged rights and ownership of the parties during the pendency of the action, for all of the reasons set forth above, will ensure a final adjudication on the merits.

As such, the Court should grant Plaintiffs' request for a preliminary injunction so that the underlying claims may proceed on the merits and an effectual judgment may be rendered clarifying the rights at issue, not merely between the parties, but also concerning public at large.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court issue a preliminary injunction (i) enjoining Defendant from selling, trading, assigning, leasing or otherwise transferring any alleged rights, in whole or in part, relating to any marks, names, trade names, or entities containing the word "McAfee" until the resolution of the underlying action, and (ii) granting such further relief in Plaintiffs' favor as may be deemed just, equitable, and proper.

Dated: New York, New York
December 13, 2016

                Respectfully submitted,

                SICHENZIA ROSS FERENCE KESNER LLP

                By: _____/s/ Scott H. Kaliko_____
                      Michael H. Ference (MF-7600)
                      Jeffrey R. Burke (JB-5265)
                      Scott H. Kaliko (SK-1163)
                      Robert B. Volynsky (RV-7076)
                61 Broadway, 32nd Floor
                New York, New York 10006
                Telephone: (212) 930-9700
                Facsimile: (212) 930-9725

                *Attorneys for Plaintiffs/Counterclaim Defendants*
                *John McAfee and MGT Capital Investments, Inc.*